SETH TAYLOR LONG #95072
Idaho Correctional Center B-120-A
P.O. Box 70010
Boise, Idaho      83707

Plaintiff Pro se

**U.S. COURTS**

**AUG 2 3 2013**

Rcvd_____Filed_____Time_____
ELIZABETH A. SMITH
CLERK, DISTRICT OF IDAHO

---

# United States District Court
### DISTRICT OF IDAHO

SETH TAYLOR LONG,                         )
)
            Plaintiff,                    )
)
    -VS-                                  )
)
CCA WESTERN PROPERTIES, INC.dba           )
CORRECTIONS CORPORATION OF AMERICA;       )
WADE FALCONBERG, ATU,PROGRAM MANG.;       )
KRISTY SKEEM, ATU, PROG.MANG.;            )
CARLY BAILEY, ATU, COUNSELOR; SANDY       )
DURAN, ATU. COUNSELOR; DAN BROWN,         )
ATU. COUNSELOR; YVES POGUE, ATU.          )
COUNSELOR; PATRICIA SIMPSON, ATU.         )
COUNSELOR; DANEL HUDON, ATU. COUN-        )
SELOR; COLLIN YOUNG, ATU. COUNSELOR;      )
BRYAN JOHNSON, ATU, UNIT MANEGER;         )
MICHAEL  GRONER, COUNSELOR SGT./          )
LT.; TIMOTHY WENGLER, WARDEN; TOM         )
KESSLER, A.W.; JASON ELLIS, WARDEN;       )
JUAN IBARRA, A.W.W_____LUNDY, ATU        )
COUNSELOR; APRIL HERRARA, ATU             )
COUNSELOR;_____SONIER, ATU               )
COUNSELOR; DOES M-X.                      )
)
            Defendants.                   )
)

CASE NO.: 13 - 375 - S - CWD

PRISONER CIVIL RIGHTS
COMPLAINT
(Title 42 § 1983)

Jury Trial Requested: X Yes

---

COMES NOW, SETH TAYLOR LONG, Plaintiff Pro se, in the above-entitled action,

for causes of action against the above-named Defendants, hereby and alleges as fol-

lows:

PRISONER CIVIL RIGHTS COMPLAINT - 1

FEE PAID
R# 1031

## I. PRELIMINARY STATEMENT

1. This is a civil rights action brought under 42 U.S.C. § 1983 arising out of Defendants' gross negligence and deliberate indifference to Plaintiff's substantive and procedural rights to due process of law and equal protection of law while he was in the custody of the Idaho Department of Correction ("IDOC") and housed at the Idaho Correctional Center ("ICC"), a private prison operated by CCA Western Properties, Inc. dba Corrections Corporation of America ("CCA"). Defendants' gross negligence and deliberate indifference, including a custom, practice and policy of denying due processes while bringing allegations of wrong doing; denying substantive and procedural due processes while putting inmates in charge of bringing allegations; putting inmates in position of authority over the Plaintiff; profitting from the above named actions through multiple and continued extensions in the Therapeutic Community Program; punishing and/or sanctioning and/or removing the Plaintiff from the Therapeutic Community Program based on false allegations without providing substantive and procedural due process of law, and equal protection of law, and creating cruel and unusual punishment through violations of protected liberty interests.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343, and 1367.

3. This Court has venue over this action pursuant to 28 U.S.C. § 1391.

## III. PARTIES

4. Plaintiff Seth Taylor Long is an individual citizen of the State of Idaho, residing presently in Ada county, Idaho at: Idaho Correctional Center, P.O. Box 70010, Boise, Idaho, 83707.

5. Defendant CCA is a for-profit business incorporated under the laws of Delaware with its principle place of business in Nashville, TN. As part of its

COMPLAINT - 2

for-profit enterprises, CCA operates ICC.

6. ICC was constructed on state-owned land in Kuna, Idaho, with public tax funds. ICC is operated under the jurisdiction of IDOC. IDOC entered into a contract with CCA under which CCA is paid to manage and operate ICC on a day-to-day basis. ICC maintains an Alcohol Treatment Unit ("ATU") under the direction and instruction of CCA, called the Therapeutic Community Program ("TC").

7. Defendant Wade Falconberg, is an individual who, upon information and belief, resides in Ada County, Idaho. Wade Falconberg was at all times relevant to this complaint, employed as ATU Program Manager at ICC. Falconberg is named in his individual and official capacity.

8. Defendant Kristy Skeem, is an individual who, upon information and belief, resides in Ada County, Idaho. Kristy Skeem is employed as ATU Program Manager at ICC. Defendant Skeem is named in her individual and official capacity.

9. Defendant Carly Bailey, is an individual who, upon information and belief, resides in Ada County, Idaho. Carly Bailey is employed as an ATU Counselor at ICC. Defendant Bailey is named in her individual and official capacity.

10. Defendant Sandy Duran, is an individual who, upon information and belief, resides in Ada County, Idaho. Sandy Duran is employed as an ATU Counselor at ICC. Defendant Duran is named in her individual and official capacity.

11. Defendant Dan Brown, is an individual who, upon information and belief, resides in Ada County Idaho. Dan Brown is employed as an ATU Counselor at ICC. Defendant Brown is named in his individual and official capacity.

12. Defendant Patricia Simpson, is an individual who, upon information and belief, resides in Ada County, Idaho. Patricia Simpson is employed as an ATU Counselor at ICC. Defendant Simpson is named in her individual and official capacity.

COMPLAINT - 3

13. Defendant Yves Pogue, is an individual who, upon information and belief, resides in Ada County, Idaho. Yves Pogue is employed as an ATU Counselor at ICC. Defendant Pogue is named in her individual and official capacity.

14. Defendant Danel Hudon, is an individual who, upon information and belief, resides in Ada County, Idaho. Danel Hudon is employed as an ATU Counselor at ICC. Defendant Hudon is named in his individual and official capacity.

15. Defendant Collin Young, is an individual who, upon information and belief, resides in Ada County, Idaho. Collin Young is employed as an ATU Counselor at ICC. Defendant Young is named in his individual and official capacity.

16. Defendant Bryan Johnson, is an individual who, upon information and belief, resides in Ada County, Idaho. Bryan johnson is employed as a Unit Manager for the ATU Unit at ICC. Defendant Johnson is named in his individual and official capacity.

17. Defendant Michael Groner, is an individual who, upon information and belief, resides in Ada County, Idaho. Michael Groner was employed as a Counselor/Sargent in the ATU Unit at ICC. And has since been promoted to Lt. at ICC. Defendant Groner is named in his individual and official capacity.

18. Defendant Timothy Wengler, is an individual who, upon information and belief, resides in Ada County, Idaho. Timothy Wengler was employed as the Warden at ICC. Defendant Wengler is named in his individual and official capacity.

19. Defendant Tom Kessler, is an individual who, upon information and belief, resides in Ada County, Idaho. Tom kessler is employed at as a Deputy Warden at ICC. Defendant Kessler is named in his individual and official capacity.

20. Defendant Juan Ibarra, is an individual who, upon information and belief, resides in Ada County, Idaho. Juan Ibarra is employed as a Deputy Warden at ICC. Defendant Ibarra is named in his individual and official capacity.

21. Defendant Jason Ellis, is an individual who, upon information and belief,

resides in Ada County, Idaho. Jason Ellis is employed as the Warden at ICC. Defendant Ellis is named in his individual and official capacity.

22. Defendant _____Lundy, is an individual who, upon information and belief, resides in Ada County, Idaho. _____Lundy is employed as an ATU Counselor at ICC. Defendant Lundy is named in her individual and official capacity.

23. Defendant AprilHerrara, is an individual who, upon information and belief, resides in Ada County, Idaho. April Herrara is employed as an ATU Counselor at ICC. Defendant Herrara is named in her individual and official capacity.

24. Defendant _____Sonier, is an individual who, upon information and belief, resides in Ada County, Idaho. _____Sonier is employed as an ATU Counselor at ICC. Defendant Sonier is named in her individual and official capacity.

25. Defendants DOES M-X are individuals who, upon information and belief, reside in Ada County, Idaho and were individually involved in the deprivations and misconduct described herein.

### IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

26. For these claims stated herein, I have exhausted the grievance system within the prison system I am incarcerated in, including: multiple Concern Forms, Grievances; Appeals; including letters and affidavits to investigating legislatures; complaints to contract monitors; and: I have given notice to the Defendants' of violations of state law Claims: Idaho Code §§ 20-241A(4)(6)(7)(a)(c) and (d).

### V. PREVIOUS OR PENDING LAWSUITS

27. I have filed no previous lawsuits in state or federal court concerning these matters. I have received no strikes of any kind for filing frivolous, malicious actions. I have no other pending actions of any kind.

### VI. REQUEST FOR APPOINTMENT OF ATTORNEY

28. I do request that an attorney be appointed to represent me in these matters.

COMPLAINT –5

I believe I am in need of an attorney for these particular reasons which make it difficult for me to pursue this action without one. 1) I am unschooled in the law and have a very limited access to legal materials. 2) The institution does not provide attorney consult or adequate legal books for litigation. There are no reporters of any kind kept at ICC. There is only one current volume of the Federal Civil Rules Handbook available for more than 2100 inmates to share. There are only two sets of Title 42 § 1983 for the entire prison population at ICC. 3) It is hard to get scheduled for the law library due to discrimination and policies not to allow inmates to gather to share legal information or assist eachother unless they live in the same unit. 4) Another prisoner prepared this action for me and there is no guarantee they will be around to continue to assist me.

## VII. FACTUAL ALLEGATIONS

29. ICC. maintains an Addiction Treatment Unit ("ATU") called the Therapeutic Community Program ("TC"). Inmates who are evaluated by prison administrations and/or the Parole Commission with a need for treatment, are given a "Pathway" program schedule to follow which often includes a requirement to take the TC program if they want parole or early release upon parole.

30. TC is a voluntary program 'privilege' with the benefits of early release and treatment. The idea is to try and get into the TC program and have it done, which is suppose to only take Nine months to complete, by the time a prisoner's fixed portion of their sentence is up. The benefit is considered an early release even though most releases occur well after the fixed portion of their sentences are up.

31. If a prisoner refuses to take the TC program, or is denied the privilege for any reason, they are most often required to 'Top-Out' their sentences and are denied parole or early release, and other benefits, such as work centers.

32. The Plaintiff, Seth Taylor Long, was given the pathway to take TC if he wanted treatment, parole or early release. The fixed portion of his sentence was up in February 2012.

33. Plaintiff 'volunteered' for the TC program but was not transferred to the "PIE" bulding at ICC until July 14, 2011 and scheduled to complete the program in April 2012 (two months passed his fixed).

34. Plaintiff was put on 'Balckout' probationary period in the program for thirty days upon arrival as is the custom and practice. Plaintiff was off 'Blackout' 'probation' August 17, 2012. While on probationary period community members are not allowed to watch TV or order food on commissary or make phone calls, among other things.

35. On August 24, 2011 Defendant's Falconberg and Skeem falsely accused Plaintiff of watching TV (after the August 17th probationary period), no due processes of any kind were provided. And Plaintiff was removed from the TC program and transferred to general population at ICC. Although the program is a privilege, and inmates volunteer for it, once a privilege with a benefit is given by the government to a prisoner, plaintiff is still entitled to due processes on all allegations made by the government during the course of the institution of that program and/or privilege, none was provided in this case.

36. Plaintiff went to the parole board on September 15, 2011. The commission did decide to give the plaintiff a release date, "upon completion of the TC program, again." The commission made no comment of the fact that Plaintiff had already been removed from the program once under false pretenses, with no due processes.

37. On October 6, 2011 Plaintiff was taken back to the TC program and placed again in the PIE building at ICC. During this time, plaintiff was advanced to automatic Phase change to mid point in the program review, due to positive participation in the program, and knowledge of the substance criteria.

COMPLAINT - 7

38. On April 5, 2012, when plaintiff was 90 days from completing the program and early release, he was suppose to be progressed to Phase three (final phase) of the program by Defendant Bailey. Bailey refused to do the paperwork and delayed the submission without any cause or official allegation or due processes of any kind.

39. On April 23, 2012 Defendant Falconberg and Defendant Skeem placed the Plaintiff, along with the entire Tier he lived on, on a lockdown status without explanation. Plaintiff was not allowed to speak to any other inmates, get off his bed except to use the bathroom or eat, and was not allowed to sleep this was from 5:30 AM to 8:30 PM for Ten (10) days. All restrictions continued after 8:30 PM except Plaintiff was allowed to go to sleep.

40. On April 27, 2012 Plaintiff observed Defendants Brown; pouge; Falconberg; Duran; Bailey; Simpson; and Young engage in an activity where they rushed into their offices and drafted a report to the parole commission concerning inmates in the TC program. They in concert argued about what the Commission was making them do regarding drafting the documents.

41. On April 27, 2012 at approximately 11:00 AM Defendant Duran saw that I was watching and listening to them and stated; "hey, that guy over there looking at us, he can probably see what you are doing."

42. After the document was drafted Defendants' Simpson and Young went to inmate James Burnight's parole hearing, whom was also in the TC program and had just been given a release date by the parole commission that day, and they reconvened the hearing after that determination and stated to the parole Commission the following: (the drafted document) "Teir One in the PIE building was currently on a 'tighthouse' status, that the whole tier was involved in "criminal" activity, and that James Burnight had two counts of threats of violence, which breaks a cardinal rule."

COMPLAINT - 8

43. The Plaintiff had heard Defendants' Falkenberg tell Skeem that; "hurry and get it done, (allegations) the parole board is backing us" "I love the parole Board, They have our back 100%."

44. The plaintiff informed Defendants' Kessler and Johnson about the other defendants actions concerning the allegations and drafting of the document. They ignored the report altogether.

45. Between April 24, 2012 and May 1, 2012 Defendants' Brown; Pouge; Bailey; Duran; and Skeem interrogated, interviewed, and threatened the inmates in Tier One. Alleging that everyone was strong arming and threatening other inmates. anyone who rebuted the false allegations were removed and accused of lying.

46. No formal written charges or affidavits or written allegations of any kind were ever presented to anyone. No Due processes of any kind were afforded to any one of us. No hearing of any kind was allowed, and no notice of any kind was given.

47. On May 2, 2012 the plaintiff was called into an office with Defendants' Brown; Bailey; Duran; Pogue; Doe M ; Houdon; Skeem; and Johnson. I was abruptly informed that "You are being removed from the TC program due to "involvement on the tier." I asked specifically what that meant and why again I was being removed and what the allegations were. Defendant Duran said. "It is not your time to ask questions." Monty Hansen, IDOC Contract Monitor was present.

48. After continued interrogation, without any formal or direct allegations against me, I objected to the dishonest and unprofessional proceedings and conduct of the Defendants' present named above, and was than told by Defendant Johnson to leave and he said: "ok, this interview is over."

49. On that day May 2, 2012 I was removed from the TC program and transferred from the PIE building to medium security in West Wing at ICC for the second time. No Due Processes or formal hearings of any kind were ever afforded, no

COMPLAINT - 9

written or clarified allegations were ever provided, and affidavits, evidence, or witnesses were presented or ever allowed.

50. The Plaintiff sibmitted numerous concern forms, grievances, complaints, and administrative objections to the false allegations; no allegations; no due processes, no evidence, no witnesses, and no formal DOR or written claims and allegations against me.

51. The plaintiff was consistently informed by the Defendants' that "The TC program did not have to provide due processes."

52. One direct question on a concern form to defendant Skeem was answered with "You have an underdeveloped pro-social skill set." A psychological evaluation she or the other defendants are unqualified to make. No grounds or due process for removal.

53. On November 1, 2012 I was confronted by Defendant Bailey and informed that I was ordered to reenter the TC program that day, and that if I refused for any reason that it would go into my file as a refusal to program and be forwarded to the parole commission. She informed me that i would have to start the program from the begining and would be given no credit or accounting for the previous participations.

54. The plaintiff requested that i be allowed to consult with an attorney concerning the conditions and requirements being demanded and Defendant Bailey refused to give me that opportunity. I was ordered to pack my property immediately and was than transferred back to the PIE building and put in the TC program on Tier three for the third time.

55. On November 2, 2012 I was ordered by Defendants Skeem; Young; lundy; Herrara; Pouge; and Sonier to engage in what is called "image breakers" and informed that I would be required to: Dance like a Ballerina; Walk like a Runway Model; Sing 'I'm a little teapot; make sounds like an animal while pretending to ride a

COMPLAINT - 10

motorcycle. And that i must do this in front of all the other inmates in the TC Program. The above named image breakers are only a few of many image breakers conjured up by the Defendants.

56. I was informed by Defendants' Skeem; young; Lundy; Herrara; Sonier; and Pouge, that if I refused to do the image breakers that it would be considered a refusal to program and I would be removed.

57. Throughout the courses of Plaintiff's participation in the TC program the Defensndants often retaliated against me and other inmates by cancelling recreation; forcing us to sit in silence; removing telephone and visiting privileges; TV and commissary privileges; and never providing just cause or due processes of any kind during these deprivations. Any complaint of any kind concerning the abuses by Defendants resulted in removal from the TC program.

58. While in the TC program the plaintiff was discouraged from asking for access to the court, and denied access altogether to the prison legal resource center. any requests made for access was delayed and than only provided through the paralegal visiting the PIE building every two or three weeks. No legal volumes were present at the PIE building at all during Plaintiffs participation. Any complaints about the access deprivation were met with the Defendants stating that I was not keeping my mind on the program and accepting respponsibility for myself, and my actions.

59. While in the TC program the Plaintiff was discouraged from attending religious services, and not allowed to attend any services outside the PIE building. Attendance to any LDS congregations with the rest of the population or the volunteer services at ICC was prohibited. Complaints about the denial of access to those services and prohibition to that congregation were met with hostility by the Defendants and denied.

60. These deprivations put a chilling effect on Plaintiff's constitutional rights

**COMPLAINT - 11**

and fear of being removed from the program if I complained of the deprivations openly. Any assertion of any kind regarding constitutional protections and rights was met by the Defendants with assertions that I was not participating and keeping my head in the program.

61. Defendants' Groner; Skeem; Young; Lundy; Sonier; Pouge; Brown; Duran; Bailey; and Houdon: Often during the course of Plaintiff's three separate TC Program participations between July 14, 2011 and November 14, 2012, these Defendants' jointly and severely would discourage, chastise and retaliate against the Plaintiff whenever the Plaintiff questioned the policies of the program that violated Plaintiff's Constitutional protections regarding Due Processes; Access To Courts; and Access To Religious Activities outside the PIE Building.

62. Whenever the Plaintiff raised concerns or objections about the constitutional violations ensuing in the policies and practices within the Addiction Treatment Unit and/or Therapy Community program, I would be placed in what the program and Defendants' would call: "The Bus Stop" or put on "Reflection Status" which consisted of the Plaintiff having to sit for hours at a time, on a metal stool in the dayroom, without speaking to or being spoke to by anyone. Not being allowed to read or watch television or listen to a radio. The purpose was to simply sit and think about ones opinion or comment that Plaintiff made or question asked. The Plaintiff was allowed to review TC Program material only, when on reflection status, which would be done sitting on ones bed for hours at a time.

63. On November 2, 2012, after refusing to engage in image breakers and either dance like a ballerina, sing I'm a little tea pot, walk like a runway model, or bark like a dog, I was again put on reflection status by Defendants' Young Lindy; herrara; Skeem; Sonier; Pouge; and Groner.

64. On November 17, 2012 the Plaintiff was again put on reflection status by Defendant Groner. When I refused to engage in the activity I was threatened with

COMPLAINT - 12

being placed in segregation (the hole) by Defendant Groner. I therefore complied with the direct order and refrained from speaking to others inmates. Although non-compliance with program criteria is not an offense pursuant to IDOC policy.

65. On the Evening of November 17, 2012 I used the telephone to call family members about the continued harassment and retaliation in the TC program. While on the phone Defendant Groner ordered that I hang the phone up and be placed in segregation at 9:30 PM. Officer Rainville was the enforcing officer of Defendant Groner. I was handcuffed and transferred to segregation in the main ICC building.

66. On November 18, 2012 while in the hole I was issued a Disciplinary Offense Report (DOR) for using the telephone.

67. November 30, 2012, well after the time allowed for providing hearings (due processes on DOR's) I was interviewed by the Disciplinary hearing Officer (DHO) Armfield. I was informed the accused offense was not an offense pursuant to IDOC policies and the DOR was dismissed after fourteen (14) Days. I was than placed back into the main population at ICC and again formally removed from the TC program as of November 17, 2012.

68. In January 2013 I was asked by Defendants' Bailey and Johnson to return to the TC program, when I asked if my constitutional protections would be adhered to and given due process on all allegations within IDOC policy, I was again informed that due processes did not apply to TC. I therefore declined to enter the program.

69. In May 2013 I was reclassified by my Unit Manager , whom informed me that I was no longer community custody, and had been overriden to medium by the above named defendants' due to "refusal to program." No due processes were provided.

70. At no time during the courses of the TC Program participation was I the Plaintiff provided due processes for any of the illigitimate allegations put forth by the inmate participants. And no due processes for Defendants' allegations as well.

COMPLAINT - 13

71. The custom and practice of the Defendants' to deny due processes constitutes deliberate indifference to Plaintiff's federal constitutional protections in violation of the Fourteenth Amendment Section one providing due process and equal protection of law.

72. The negligent actions and deliberate indifference to plaintiffs liberty interests once a privilege with a benefit was provided, than taking it away without providing due processes and equal protection of law is in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

73. As a direct and proximate result of the negligent, grossly negligent, reckless, and/or willful misconduct of the Defendants', Plaintiff Seth Taylor Long suffered serious deprivation of his several constitutional protections and damages, including economic damages as well as non-economic damages, including mental pain and suffering, all in the amount Plaintiff reserves the right to prove at the time and place of trial of this action.

## VIII. CLAIMS FOR RELIEF

### A. FOURTEENTH AMENDMENT: All Defendants:

74. Plaintiff, Seth Taylor Long repeats and re-alleges each of the allegations set forth in the preceding paragraphs as if set forth in full herein.

75. The practice and custom of denying due process and equal protection of law to Plaintiff when any allegations were brought by the defendants' fell outside well established lawful guidelines for providing minimal due process for prisoners, and was grossly negligent because, among other things, they denied Plaintiff the opportunity to refute and/or dispute the governments evidence and/or allegations, denied Plaintiff the opportunity to present witnesses, denied Plaintiff the right to be heard, and denied Plaintiff any prior notice and/or written notice of the charges against Him, and denied Plaintiff timely notice of any hearing, place and time of any hearing, or any hearing at all.

COMPLAINT - 14

76. As a result of the Defendants' actions Plaintiff suffered loss of the privilege and it's benefits, numerous times; loss of custody status, numerous times; suffered multiple transfers, harassment, and retaliation, numerous times; plaintiff suffered significant deprivation of my constitutional protections and rights; significant injury to my liberty interests and damages.

**B. EIGHTH AMENDMENT: All Defendants'.**

77. Plaintiff, Seth Taylor Long repeats and re-alleges each of the allegations set forth in the preceding paragraphs as set forth in full herein.

78. The Defendants' were deliberately indifferent to plaintiff's liberty interests, mental and physical well being, expectation of constitutional protections, and right to due processes, and thereby violated Plaintiff's right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

79. Defendants' deliberate indifference was manifested, but not necessarily limited to, the following:

- The continued and repeated failure to provide due process and equal protection of law prior to removing Plaintiff from the TC program;

- Denying delaying, and intentionally interfering with practices and/or policies of IDOC that proscribe that all prisoners are entitled to due process of law, and equal protection of law concerning all disciplinary proceedings;

- Adopting, approving and/or implementing policies that deny due processes for individuals enrolled in the TC program that violate constitutional rights;

- Adopting, approving and/or implementing policies that resulted in the failure to provide Plaintiff with adequate due processes when it was requested.

- Implementing practices and customs that put a chilling effect on Plaintiffs constitutional protections.

- Abusing the processes under false pretenses to extend participation.

**COMPLAINT - 15**

80. At all times relevant to this Complaint, Defendants' were acting under color of state law.

81. At all times relevant to the Complaint, the conduct of all Defendants' was intentional, willful, and reckless with respect to Plaintiff's rights under Federal Law.

82. At all times relevant to the Complaint, the conduct of all Defendants' violated clearly established constitutional rights of which a reasonable person would or should have known.

83. Defendants' were aware of facts from which the inference could be drawn that a substantial risk of deprivation of constitutional protections through false or unfounded allegations by other inmates and/or staff existed if Plaintiff did not receive adequate due processes for allegations of wrongdoing or non-participation in the TC-program, and Defendants' did, in fact, draw that inference.

84. Defendants' had a duty to act and failed to do so in the face of an unjustifiable risk of harm that was known or so obvious that it should be known.

85. Plaintiff, Seth Taylor Long, had an inalienable right to fair due processes, for which the failure to properly protect and provide them resulted in further significant deprivation and injury and the unnecessary and wanton denial of due processes and equal protection of law inflicting loss of liberty interests, loss of privileges, loss of benefits, and/or mental anguish.

86. As a result of Defendants' deliberate indifference, Plaintiff suffered a significant personal deprivation, inury, and damages. That continues.

## C. STATE LAW CLAIM: All Defendnats'.

87. Plaintiff, Seth Taylor Long repeats and re-alleges each of the allegations set forth in the preceding paragraphs as set forth in full herein.

88. The Defendants' are in violation of Idaho State Law Idaho Code § 20-241(4)(6)(7)(a)(c) & (d). Which violation in turn violates Federal Rights.

COMPLAINT - 16

89. CCA employees approximately 35 staff and security personnel at the TC program. While there are approximately 6 addiction treatment counselors alone per 100 inmates, in the ICC main population there is one counselor for every 150 to 240 inmates.

90. The TC-Program requires that the inmates write DOR's or 'tickets' on one another. which in turn are used to determine participation and removal in the program. The abuses by the inmates and staff are far and wide, especially with no due processes being provided for this process.

91. When the Plaintiff is removed from the TC-Program, my occupancy within the CCA/ICC Institution is extended, which provides more profits for the CCA Company. And Where participation in the program is determined by other inmates and that process is used to remove individuals, as was done in the Plaintiffs case, three separate times, the private prison is profiting from the labor and abuses of inmates.

92. Idaho Code 20-241A(4)(b) states: "provide that the privater prison contractor shall not benefit financially from the labor of inmates nor shall any inmate ever be placed in a position of authority over another inmate. Any profits realized from the operation of a prison enterprise program shall revert to the department of correction or appropriate governmental authority."

93. The Private prison corporation CCA/ICC is profiting from the labor of inmates through violating the second portion of this statute wherein they place inmates in position of authority over other inmates, whereby they make determinations on who is participating enough to remain and who is not. As in the Plaintiff's case, removal from the program results in starting over, extending the time in custody of CCA/ICC Addiction Treatment Unit.

94. This violation of state law is a process which violates Plaintiff's right to equal protection of the law and due processes, as well as cruel and unusual

COMPLAINT - 17

punishment as referenced above and referred to here.

95. Idaho Code § 20-241A(7) states: "No contract for correctional services may authorize, allow, or imply a delegation of authority or responsibility to a private prison contractor which would allow the contractor to:" (a) "Develope or implement procedures for calculating inmate release dates.";

96. The Defendants' after once admitting the Plaintiff, and those similarly situated into the TC-Program, one of the benefits is early release. when that release is nullified and the Plaintiff is reinstituted back into the main population, CCA/ICC benefits financially, both through continued incarceration, and continued TC-Programing. This circuitous process is expanded and abused by the Defendants' through their claim that they need not provide due processes for the Plaintiff and those similarly situated in the Addiction Treatment Unit when they are removed from the TC-Program.

97. Through this circuitous process, removing without proper procedures and oversight, the private prison contractor is changing, developing, and implementing procedures that calculate (extend) inmate release dates. In violation of Idaho law. And in violation of federal law and constitutional protections.

98. Idaho Code § 20-241A(7)(c), states: "place an inmate under less restrictive custody or more restrictive custody or take any disciplinary actions contrary to rules and procedures approved by The Idaho Department of Corrections.;"

99. The Defendants' by denying due processes in disciplinary actions, acting on false or unfounded allegations by other inmates illegitimately in authority over other inmates, are in fact transferring and changing custody levels and taking disciplinary action outside of IDOC policy and approved procedures, are in clear violation of this section, and of constitutional protections.

100. Idaho Code § 20-241A(7)(d), states: "Develop or implement procedures

regarding the care, custody and treatment of inmates which are contrary to IDOC policies and procedures, state or federal law."

101. The Defendants' by denying due processes in disciplinary proceedings, denying equal protection of law in liberty interests, reclassifying the Plaintiff and others similarly situated when program participation is determined by other inmates, changing custody and location impermissibly, under impermissible factors, are in violation of this state statute and federal law and constitutional protections.

D.  RETALIATION: All Defendants'

102. Plaintiff, Seth Taylor Long repeats and re-alleges each of the allegations set forth in the preceding paragraphs as set forth in full herein.

103. The Defendants' matrix of using inmates in authority over other inmates, making determinitive decisions of program participation, and the abuses that ensue, as well as the policy of denying due processes to address those determinations, is illegitimately used as a guide and constitutes "unequal mechanical decision making" resulting in impermissible mandatory preference; and abuses; consequently, the matrix process violates equal protection guarantees.

104. The Defendants' disparate participation and removal falls in the category of special treatment given selected class which impinges seriously on fundamental personal liberty interests; therefore burden rests on the state agents to show substantial justification, empirically grounded, for scheme whereby only those determined participants could receive prescribed release rather than in accordance with statutory schedule. Which scheme violates the Fourteenth Amendment. Defendants' have taken actions against plaintiff for exercising my First Amendment rights. These acts of retaliation are ongoing.

105. These actions would have the effect of a chilling of a person of ordinary firmness from exercising these rights.

COMPLAINT - 19

106. The Defendants' jointly and severely discourage pursuing litigation while in the TC-Program; deny any access to the prison legal resource center; refuse to place legal volumes of any kind within the TC-Community building (PIE); hinder and delay access to the paralegal, whom comes only once a week or less; discourages filing grievances, concerns or complaints; refuses to answer many written complaints and grievances, or answers them inproperly, nummifying the processes; denies any access to the religious services in the CCA/ICC main building, and/or communion with members of any affiliation outside the PIE building.

107. Any complaints or asserted objections to these practices is met with removal and from the program and reprisals. As stated above, Plaintiff's third removal was due to attempts to contact outside help by phone to aquire counsel and legal consultation.

108. While inmates in the PIE building and in the TC-program still enter the main building and conjoin with main population inmates in various forums, e.g., visiting; medical; halways; parole hearings, all of which are mixed populations, the Plaintiff and those similarly situated are illogically prohibited from accessing the resource center, and religious services, in the main building.

109. These acts of deprivation are in violation of Plaintiffs First Amendment right to Freedom of Religion and to Grieve Government, which complaints of this violation result in retaliation, removal, and reprisals by the Defendants'.

## IX. REQUEST FOR ATTORNEYS FEES

110. As a further direct and proximate result of the negligent, grossly negligent, reckless, and/or willful misconduct of the Defendants; Plaintiff has been and is required to seek retaining counsel for the purpose of prosecution of this action, and are entitled to recover all reasonable costs and attorneys fees incurred in prosecution of this action pursuant to 42 U.S.C. § 1988 & Idaho Law.

COMPLAINT - 20

## X. REQUESTED RELIEF

Wherefore, Plaintiff, Seth Taylor Long respectfully requests:

A.  Compensatory and/or Punitive damages, including but not limited to, loss of constitutional protections to due process of law, mental anguish and humiliation;

B.  Compensatory and/or punitive damages for infliction of cruel and unusual punishment and/or retaliation by Defendants;

C.  Declaratory relief stating that the prison policies denying due process of law in the Addiction Treatment Unit for allegations that would or could remove an inmate from the program is unlawful and unconstitutional;

D.  Declaratory relief stating that the practice of the private prison and its programs of putting inmates in authority over other inmates through writing disciplinary actions or bringing allegations in the program is in violation of state law and IDOC policy regarding due processes;

E.  Declaratory relief that prohibits the private prison from using inmates to determine participation in the TC-Program that allows removal and/or any extended incarceration within the private prison in any form or any extended participation in the program that benefits the private prison financially;

F.  Declaratory relief stating that allowing the private prison to use an inmate and/or program to deny early release for participation is an illegal authorization that delegates authority to determine relese.

G.  Declaratory relief stating that improper procedures used to remove inmates from the TC-Program without due processes and/or IDOC approved Disciplina-ary procedings is contrary to approved IDOC procedures;

COMPLAINT - 21

H.   Declaratory relief stating that the private prison processes that are
developed at the private prison Addiction Treatment Unit regarding the
care, custody, and treatment of inmates is contrary to IDOC policies and
procedures; and in violation of state and federal law;

I.   Plaintiff seeks damages against all Defendants' jointly and severally
pursuant to 42 U.S.C. § 1983;

J.   Reasonable attorneys' fees; as provided under 42 U.S.C. § 1983 and
other applicable statutes;

K.   Such other and further relief as may appear just and appropriate.

### XI. DECLARATION UNDER PENALTY OR PERJURY

I, Seth Taylor Long, plaintiff Pro se herein, declare under penalty of perjury:
that I am the plaintiff in this action, that I have read the complaint, and that
the information contained in the complaint is true and correct pursuant to 28
U.S.C. § 1746; 18 U.S.C. § 1621;

Executed at: Idaho Correctional Center on August 1, 2013.

SETH TAYLOR LONG, PLAINTIFF PRO SE

SUBSCRIBED to and SWORN before me this 1st day of August, 2013.

James H. Quinn
NOTARY FOR IDAHO
Commission Expires: 9/10/2013

JAMES G. QUINN
NOTARY PUBLIC
STATE OF IDAHO

COMPLAINT - 22